UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:18-CV-00286-BJB-CHL

UNITED STATES OF AMERICA
*EX REL.* BEVERLY POWELL, et al.,                                    **Plaintiffs,**

**v.**

AEROCARE HOLDINGS, INC.,                                              **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motion and Memorandum of Law to Extend Temporary Seal (DN 23) of Plaintiff/Relator Beverly Powell ("Relator") and the United States' Notice of Consent to Voluntary Dismissal Without Prejudice As to The United States and Motion to Enter Proposed Order to Unseal (DN 21).  This action is referred to the undersigned for disposition of all non-dispositive motions.  (DN 26.)  No response to these motions were filed, and the time to do so has expired.  Thus, these matters are ripe for review.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The Relator filed this *qui tam* action on May 8, 2018, on behalf of the United States and certain individual states against Defendant Aerocare Holdings, Inc. ("Aerocare") pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").[1]  (DN 1.)  In November 2016, Relator began working for Aerocare as a Revenue Cycle Manager when Aerocare purchased her employer, Premier Home Care, for whom she had worked since 2000.  (*Id.* at PageID # 2.)  Relator alleged that Aerocare engaged in a scheme to continually profit from Medicare by purposely adding a billing code for oxygen tank refills to all Medicare customers after the thirty-sixth month

---

[1] The qui tam states are Georgia, Florida, Tennessee, Indiana, North Carolina, Iowa, Colorado, Oklahoma, Texas, and Virginia.  (DN 1.)

"regardless of whether oxygen tank contents are actually delivered." (*Id.* at 3.) This scheme, Relator claimed, resulted in Medicare, Medicaid, and potentially other federally funded government healthcare programs paying false claims for oxygen tanks "that were never delivered to beneficiaries." (*Id.* at 2.)

Pursuant to 31 U.S.C. § 3730, the entire case was filed under seal. (DNs 3, 4.) The United States filed several motions to extend the seal to determine whether it would intervene in the Relator's *qui tam* action (DNs 5, 7, 9, 11, 15, 19), which the Court granted (DNs 6, 8, 10, 12, 16, 20).

On April 9, 2021, Relator filed a voluntary dismissal of the underlying suit, without prejudice, pursuant to Fed. R. Civ. P. 41(a). (DN 22.) That same day, Relator filed a motion to extend the case's seal for an additional two years to give her sufficient time to establish herself at a new company and mitigate the risk of retaliation. (DN 23.) Shortly thereafter, the United States filed a consent to the dismissal so long as it was without prejudice as to the United States. (DN 21.) The United States took no position on Relator's request to delay the unsealing of the Complaint but requested that when the case is unsealed, "all other papers on file in this action remain under seal, to specifically include" its motions for extension (DNs 5, 7, 9, 15, 19). (*Id.*) It argued that "such papers [we]re provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended," citing 31 U.S.C. § 3730(b)(3). (*Id.* at PageID # 96-97.) In its proposed order, it stated that the motions for extension it specifically requested remain sealed "relate to the Government's requests for extensions of the seal and intervention period," "were submitted to the Court to inform it of actions taken to further the investigation," and "are protected by the work-product doctrine and law enforcement/investigatory files privilege." (DN 21-1, at PageID # 98-99.)

## II.    DISCUSSION

### A.    The False Claims Act Generally

The FCA "prohibits submitting false or fraudulent claims for payment to the United States and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 404 (2011) (citations omitted) (citing 31 U.S.C. §§ 3729(a), 3730(b)(1)).   The Act mandates that a *qui tam* relator file the complaint under seal and that it remain sealed for at least sixty days.  31 U.S.C. § 3730(b)(2).  This sixty-day sealing period allows the Government time to investigate the allegations to "make an informed decision about whether to intervene." *Am. C.L. Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011).  For good cause shown, the Government may request extensions of time to investigate during which the complaint remains under seal. 31 U.S.C. § 3730(b)(3).

If the United States decides to intervene in a *qui tam* action, it effectively "takes over the litigation."   *Holder*, 673 F.3d at 250. In those circumstances, the Complaint and docket are unsealed, and the United States serves the complaint on the defendant.  *Id.*  The *qui tam* relator, however, remains a party to the action.  *Id.*   But where, as here, the United States declines to intervene, the Complaint and docket are unsealed, and the *qui tam* relator serves the complaint on the defendant.  *Id.*

### B.    Relator's Motion to Temporarily Extend the Seal (DN 23)

Relator requested that the seal on her Complaint be extended for an additional two years because she has just recently transitioned from her job at Aerocare to a new employer.  (DN 23.) She argued that it is "highly foreseeable" that unsealing the Complaint will result in retaliation and/or blackballing from Aerospace and, potentially, her new employer.  (*Id.* at PageID # 105.) She also theorized that unsealing could potentially end "her career altogether in the healthcare

3

industry." (*Id.*)  She argued that maintaining the seal for an additional two years provides her reasonable time to mitigate these risks by establishing herself at her new employer and that failure to keep the Complaint under seal for this additional time would have an unnecessary chilling effect on future whistleblowers.  (*Id.* at 110-11.)  She argued that both the FCA and common law do not mandate unsealing her Complaint in the instant case. (*Id.* at 106-11.)

As to the FCA, Powell argued that 31 U.S.C. § 3730(b)(4) does not explain "the way the seal is to be maintained where, as here, the Government decides not to pursue the action, and the Relator, rather than commencing litigation, instead files a dismissal."  (*Id.* at 105.)  She argued that the FCA "invests the court with the authority to maintain the seal on the complaint and other case filings, in their entirety" and cited in support to *U.S. ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.,* 349 F. Supp. 2d 170 (D. Mass. 2004); *U.S. ex rel. Yannacopolous v. Gen. Dynamics,* 457 F. Supp. 2d 854 (N.D. Ill. 2006); *U.S. by Dep't of Def. v. CACI Int'l Inc.*, 885 F. Supp. 80 (S.D.N.Y. 1995); and *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F. Supp. 189 (E.D. Mo. 1995).  (*Id.*)  But these cases do not support her proposition that the statute permits an FCA complaint to be kept indefinitely under seal and all either explicitly recognize that "the statute clearly contemplates that the complaint be unsealed once the government has acted with respect to intervention" or are cases where the court unsealed the complaint after the government declined to intervene.  *Health Outcomes*, 349 F. Supp. 2d at 173; *Yannacopolous*, 457 F. Supp. 2d at 858 ("[T]he FCA clearly contemplates that the complaint be unsealed once the government has decided whether to intervene . . . ."); *CACI*, 885 F. Supp. at 83 (unsealing complaint); *O'Keefe*, 902 F. Supp. at 191 ("The statute at issue, § 3730 of the False Claims Act, clearly envisions the lifting of the seal as to the relator's complaint . . . .").  While the Sixth Circuit has not yet spoken on the issue, district courts within this Circuit have found that the complaint must be unsealed after

the government determines whether or not to intervene.  *See U.S. ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 784-85 (E.D. Mich. 2008); *U.S. ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*, No. 97-CV-72992-DT, 2001 WL 34091259, at *2 (E.D. Mich. Jan. 24, 2001); *U.S. ex rel. Howard v. Lockheed Martin Corp.*, No. 1:99-CV-285, 2007 WL 1513999, at *2 (S.D. Ohio May 22, 2007); *U.S. ex rel. Ruble v. Skidmore*, No. 2:09-CV-549, 2011 WL 5389325, at *2 (S.D. Ohio Nov. 8, 2011); *U.S. ex rel. Eberhard v. Angiodynamics, Inc.*, No. 3:11-CV-556, 2013 WL 2155327, at *3 (E.D. Tenn. May 17, 2013); *U.S. ex rel. Bingham v. HCA, Inc.*, No. 1:08-CV-71, 2012 WL 5997952, at *2 (E.D. Tenn. Nov. 30, 2012).  This conclusion is consistent with Sixth Circuit law noting that "the primary purpose of the [FCA's] under-seal requirement is to permit the Government sufficient time in which it may ascertain the status quo and come to a decision as to whether it will intervene in the case filed by the relator."  *United States ex rel. Summers v. LHC Group, Inc.,* 623 F.3d 287, 292 (6th Cir. 2010), *abrogated by State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 442 (2016).  With that purpose in mind, once the government has made a decision regarding intervention, no further justification exists to continue the seal.  *See also U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995) (explaining that purpose of § 3730(b)(2)'s sealing provision is to allow the government to study and evaluate, out of public view, the relator's information for possible intervention or overlapping criminal investigation).  The Fourth Circuit has similarly acknowledged that "in every FCA case, the qui tam complaint will be unsealed." *Holder*, 673 F.3d at 257.  This interpretation of the FCA is the majority position of district courts across the country.[2]

---

[2] *U.S. ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228,1230-31 (N.D. Ala. 2000); *U.S. ex rel. Denomme v. Powell*, No. CV 00-0768-CB-C, 2001 WL 37124485, at *1 (S.D. Ala. Oct. 31, 2001); *U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK (SSX), 2014 WL 12588296, at *1 (C.D. Cal. Mar. 21, 2014); *U.S. ex rel. Boyd v. Riverpoint 714 LLC*, No. 2:15-CV-1406-KJM-CKD, 2016 WL 3217899, at *1 (E.D. Cal. June 10, 2016); *U.S. ex rel. Handal v. Ctr. for Emp. Training*, No. 213CV01697KJMKJN, 2016 WL 561774, at *2 (E.D. Cal. Feb. 12, 2016); *U.S. ex rel. McCoy v. Cal. Med. Rev., Inc.*, 715 F. Supp. 967, 968-69 (N.D. Cal. 1989); *U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011); *United States v. Sunovion Pharms., Inc.*, No. 8:14-CV-

Thus, Relator's position regarding sealing her Complaint is not in accordance with or supported by the FCA.

As to Relator's argument that common law does not mandate that the complaint be unsealed, this argument misstates the law of this Circuit. It is well-established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176-79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). To meet this burden, the party seeking a seal must show (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly-tailored. *Id.*; *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.,* 834 F.3d 589, 593-94 (6th Cir. 2016). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.' " *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Int'l., Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a motion to seal, the Court is required to make "specific findings and conclusions 'which justify

1319-T-33MAP, 2016 WL 6071737 (M.D. Fla. Oct. 17, 2016); *United States v. Aurora Diagnostics, Inc.*, No. 1:16-CV-21338-KMM, 2017 WL 8781118, at *2 (S.D. Fla. Aug. 30, 2017); *U.S. ex rel. Locklear v. Medixx Transp., LLC*, No. CV617-139, 2018 WL 3419272, at *1 (S.D. Ga. July 13, 2018); *Yannacopolous*, 457 F. Supp. 2d at 858; *U.S. ex rel. Jayakar v. Munster Med. Rsch. Found., Inc.*, No. 2:08-CV-350-TLS, 2017 WL 2570283, at *2 (N.D. Ind. June 14, 2017); *U.S. ex rel. Wenzel v. Pfizer, Inc.*, 881 F. Supp. 2d 217, 221 (D. Mass. 2012); *Health Outcomes,* 349 F. Supp. 2d at 173; *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 799 F. Supp. 2d 547, 548 (D. Md. 2011); *U.S. ex rel. Littlewood v. King Pharms., Inc.*, 806 F. Supp. 2d 833, 842 (D. Md. 2011); *O'Keefe*, 902 F. Supp. at 191; *U.S. ex rel. Smith v. Carolina Comprehensive Health Network*, No. 1:16CV234, 2021 WL 325705, at *3 (M.D.N.C. Feb. 1, 2021); *U.S. ex rel. Monahan v. St. Barnabas Health Care Sys., Inc.*, No. CV 02-5702 (JAG), 2009 WL 10733720, at *3 (D.N.J. Feb. 10, 2009); *CACI*, 885 F. Supp. at 83; *U.S. ex rel. Coughlin v. Int'l Bus. Machines Corp.*, 992 F. Supp. 137, 140 (N.D.N.Y. 1998); *U.S. ex rel. Johnson-Pochardt v. Rapid City Reg'l Hosp.*, No. 01-5019-KES, 2003 U.S. Dist. LEXIS 4758, at *3-5 (D.S.D. Jan. 21, 2003); *U.S. ex rel. Voss v. Monaco Enters., Inc.*, No. 2:12-CV-0046-LRS, 2016 WL 9461779, at *1 (E.D. Wash. Dec. 23, 2016); *U.S. ex rel. Erickson v. Univ. of Wash. Physicians*, 339 F. Supp. 2d 1124 (W.D. Wash. 2004).

nondisclosure to the public.' " *Rudd,* 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). " '[A] court's failure to set forth those reasons . . .' is itself sufficient grounds to vacate the seal." *Id.* (quoting *Shane Grp.*, 825 F.3d at 306).

Relator attempted to demonstrate a compelling interest by arguing that unsealing the complaint might cause her to suffer retaliation or harm to her reputation in the healthcare industry as well as have a chilling effect on the willingness of potential whistleblowers in future FCA cases. (DN 23, at PageID # 109-11.)  Other district courts have rejected Relator's argument and found that generalized fear of harm to reputation or of retaliation are not sufficient grounds to keep a complaint under seal.  *See, e.g.*, *Durham*, 818 F. Supp. 2d at 68-69; *Aurora*, 2017 WL 8781118, at *3-4; *U.S. ex rel. Graves v. Internet Corp. for Assigned Names & Numbers, Inc.*, 398 F. Supp. 3d 1307, 1313 (N.D. Ga. 2019); *Wenzel*, 881 F. Supp. 2d at 221-22; *King*, 806 F. Supp. 2d at 840-43; *Bon Secours*, 665 F. Supp. 2d at 786; *U.S. ex rel. Evans v. RehabCare Grp., Inc.*, No. 1:15CV80 RLW, 2016 WL 8234943, at *2-3 (E.D. Mo. Dec. 2, 2016); *United States v. Apothetech RX Specialty Pharmacy Corp.*, No. 315CV00588CWRFKB, 2017 WL 1100818, at *1-2 (S.D. Miss. Mar. 20, 2017); *U.S. ex rel. Nash v. UCB, Inc.*, No. 14-CV-2218 (TPG), 2017 WL 838198, at *3 (S.D.N.Y. Mar. 3, 2017); *Jacobs v. Lambda Rsch., Inc.*, No. 1:10-CV-536, 2012 WL 748578, at *2 (S.D. Ohio Mar. 8, 2012); *Ruble*, 2011 WL 5389325, at *3-4; *Purcell v. Gilead Scis., Inc.*, 415 F. Supp. 3d 569, 576-77 (E.D. Pa. 2019); *Eberhard*, 2013 WL 2155327, at *3; *U.S. ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007).  Specifically, courts have held that "generalized claims of possible future retaliation" and "[s]peculative and vague conclusions of 'stigma our society attached to whistleblowers' and possible 'negative impact' on [r]elators' continued livelihood possibly preventing them from future employment do not outweigh the strong presumption of public access to judicial materials." *Purcell*, 415 F. Supp.

3d at 576-77.  Relator offers no more specific claims than those rejected by the courts cited above.
She "knew, or should have known, when she filed her *qui tam* complaint that most likely her
identity would eventually be revealed," and, therefore, she "accepted the risk of her identity
becoming known when she decided to initiate this action."  *U.S. ex rel. Danner v. Quality Health
Care Inc.*, No. 11-4026-CM-KMH, 2011 WL 4971453, at *2 (D. Kan. Oct. 18, 2011).  The
concerns she raises are no different than those that could be argued by any plaintiff bringing a
claim against a current or former employer or alleging fraud; thus, to allow those concerns to
justify a seal—even a temporary one—would create a precedent that would ultimately "frustrate
the public's right to access of court documents."  *Id.* at *3.  This is both inappropriate under the
law cited above and unnecessary because other remedies exist to deter the harm she seeks to
remedy via a seal.  The FCA itself contains an anti-retaliation provision in 31 U.S.C. § 3730(h)
and "the law provides other possible remedies, including tortious interference with contract or
business relations, and defamation" to protect whistleblowers from discriminatory action.
*Permison*, 492 F. Supp. 2d at 564; *see also Bon Secours*, 665 F. Supp. 2d at 786; *Apothetech*, 2017
WL 1100818, at *2; *Nash*, 2017 WL 838198, at *3.  Thus, "[a] litigant's fear of embarrassment or
harm to his reputation is simply not sufficient to overcome the strong presumption of public
access."  *Jacobs*, 2012 WL 748578, at *2.

Relator also argued that this case does not have "historical or public significance" and will
not gain the same because Relator is seeking a voluntary dismissal; therefore, there will be no trial
or discovery in this matter.  (DN 23, at PageID # 106-09.)  This argument is without merit as
regardless of whether this matter proceeded to trial, Relator's FCA claims allege fraud against the
government, a topic that courts have found to be of particular concern to the public.  *See, e.g.*, *Bon
Secours*, 665 F. Supp. 2d at 785; *Permison*, 492 F. Supp. 2d at 564 ("[T]he presumption in favor

of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public, such as allegations of fraud against the government."); *Ruble*, 2011 WL 5389325, at *3. That she seeks to dismiss the action does not diminish potential public interest in Relator's allegations. *See Durham*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011) ("Voluntary dismissals of FCA actions do not render the allegations any less relevant to the taxpaying public."). In light of these authorities, the Court finds that the public interest in viewing Relator's Complaint is high and not outweighed by any of the interests she advanced to justify a seal. Thus, the Court finds that Relator has not demonstrated that any privacy interests or other compelling interest justifies keeping her Complaint under seal. *See U.S. ex rel. Maur v. Hage-Korban*, No. 117CV01079STAJAY, 2019 WL 4023751, at *1-2 (W.D. Tenn. Aug. 26, 2019) (sealing original complaint containing patient-identifying medical record numbers in light of unsealed amended complaint lacking private information and "contain[ing] the same allegations").

As Relator has failed to demonstrate that either the FCA or Sixth Circuit law regarding sealing judicial records support her request, her motion to extend temporary seal is **DENIED**. The Court will direct that her Complaint (DN 1) be **UNSEALED**.

### C.   The United States' Request to Partially Maintain the Seal (DN 21)

The United States requested that the Court maintain the seal with respect to "all other contents of the Court's file in this action" other than the Complaint (DN 1), the United States' Notice of Consent to Voluntary Dismissal (DN 21-1), and the Court's Order regarding dismissal. (DN 21-1.) Despite its request for "all other papers" than those cited above to remain under seal, the United States specifically requested that any seal cover five motions for extension of time the United States filed on July 17, 2018; February 12, 2019; August 12, 2019; October 2, 2020; and February 10, 2021, respectively (DNs 5, 7, 9, 15, 19). (DN 21, at PageID # 96.) The United States

argued that those motions were provided to the Court "for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." (*Id.* at 96-97.) Though it cited no supporting authority outside of the statutory provision itself, the proposed order accompanying its notice stated that those filings were "submitted under seal pursuant to 31 U.S.C. § 33730(b)(3) [*sic*] and are protected by the work-product doctrine and law enforcement/investigatory files privilege." (DN 21-1.) Relator did not file a response or otherwise specifically address the United States' requested seal in her own filing.

Section 3730(b)(3) of the FCA permits the Government, on good cause shown, to "move the court for extensions of the time during which the complaint remains under seal" and to support its motion with "affidavits or other submissions in camera." 31 U.S.C. § 3730(b)(3). The good cause requirement is substantive and requires the Government to state "a convincing rationale for continuing the seal." *See, e.g.*, *U.S. ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1190 (N.D. Cal. 1997). While, as detailed above, the FCA contemplates that the complaint be unsealed after the Government has acted with respect to intervention, the FCA does not address whether continued sealing of other documents, such as the United States' motions for extensions pursuant to § 3730(b)(3), is appropriate. *U.S. ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994). *See also CACI*, 885 F. Supp. at 81; *Coughlin*, 992 F. Supp. at 140; *Health Outcomes*, 349 F. Supp. 2d at 173; *Johnson-Pochardt*, 2003 U.S. Dist. LEXIS 4758, at *4; *King*, 806 F. Supp. 2d at 842; *Rostholder*, 799 F. Supp. 2d at 548; *Yannacopolous*, 457 F. Supp. 2d at 858. As with Relator's request to keep the Complaint under seal above, the Sixth Circuit has not addressed whether these other documents should be unsealed after government has acted with respect to intervention. But the majority of courts to address the issue have found that "[i]n permitting *in camera* submissions, the statute necessarily invests the court with authority to preserve secrecy of such items or make

them available to the parties." *Mikes*, 846, F. Supp. at 23. *See also Erickson*, 339 F. Supp. 2d at 1126; *Goodstein*, 2001 WL 34091259, at *2; *Handal*, 2016 WL 561774, at *2; *Health Outcomes*, 349 F. Supp. 2d at 173; *Jayakar*, 2017 WL 2570283, at *2; *King*, 806 F. Supp. 2d at 842-43; *Yannacopolous*, 457 F. Supp. 2d at 858-59; *U.S. ex rel. Alridge v. Cain*, No. 1:16-CV-369 HTW-LRA, 2018 WL 1162252, at *5 (S.D. Miss. Mar. 4, 2018); *U.S. ex rel. Colo. v. Rocky Mountain Gastroenterology Assocs., PLLC*, No. 14-CV-00128-RM-MEH, 2015 WL 3494501, at *2 (D. Colo. June 2, 2015); *U.S. ex rel. L. Project for Psychiatric Rts. v. Matsutani*, No. 3:09-CV-0080-TMB, 2010 WL 11515341, at *2 (D. Alaska Sept. 14, 2010). These courts analogize the issue to the analysis of whether to grant a protective order to protect trade secrets and similar information under Fed. R. Civ. P. 26(c) and address whether to unseal documents previously submitted under seal through "a pragmatic balancing of the need for and harm risked by, disclosure[ ]." *Mikes*, 846, F. Supp. at 23. *See also Carolina*, 2021 WL 325705, at *3; *Erickson*, 339 F. Supp. 2d at 1126; *King*, 806 F. Supp. 2d at 843; *Matsutani*, 2010 WL 11515341, at *2; *O'Keefe*, 902 F. Supp. at 191; *Rostholder*, 799 F. Supp. 2d at 548; *Yannacopolous*, 457 F. Supp. 2d at 858. In engaging in this balance, courts have held that "[w]here disclosure of confidential investigative techniques, of information which could jeopardize an ongoing investigation, or of matters which could injure non-parties is requested," a continued seal is appropriate. *Mikes*, 846, F. Supp. at 23. *See also CACI*, 885 F. Supp. at 82 (noting that interference with ongoing investigation is a legitimate basis to request continued seal); *King*, 806 F. Supp. 2d at 843; *U.S. ex rel. Singh v. Bradford Reg'l Med. Ctr.*, No. CIV. 04-186, 2007 WL 7705584, at *2 (W.D. Pa. June 6, 2007); *U.S. ex rel. Lee v. Horizon W., Inc.*, No. C 00-2921 SBA, 2006 WL 305966, at *2 (N.D. Cal. Feb. 8, 2006).

District courts have denied requests to seal and unsealed documents that merely described "routine investigative procedures which anyone with rudimentary knowledge of investigative

processes would assume would be utilized in the regular course of business" or included "no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized, or the like." *Mikes*, 846 F. Supp. at 23. *See also CACI*, 885 F. Supp. at 83; *Coughlin*, 992 F. Supp. at 141; *Erickson*, 339 F. Supp. 2d at 1126; *Health Outcomes*, 349 F. Supp. 2d at 173-74; *King*, 806 F. Supp. 2d at 843; *U.S. ex rel. Hong v. Newport Sensors, Inc.*, No. SACV1301164JLSJPRX, 2015 WL 13358179, at *2 (C.D. Cal. Sept. 25, 2015); *U.S. ex. rel. Yannity v. J & B Med. Supply Co.*, No. 08-11825, 2011 WL 4484804, at *6 (E.D. Mich. Sept. 27, 2011). Applying these principles, courts have also taken into account whether the documents named witnesses, contained substantive details of an investigation, were based on dated information, lacked specificity, discussed ministerial discovery matters, were brief, or contained only cursory explanations for the extension sought. *See Yannacopolous*, 457 F. Supp. 2d at 858-59 (unsealing documents that did "not contain names of witnesses, information about particular documents or substantive details of the investigation" and were based on dated information); *Rostholder*, 799 F. Supp. 2d at 549 (unsealing documents that identified "[n]o specific individuals, other than the relator, or investigative techniques"); *U.S. ex rel. Mahmood v. Elizabethtown Hematology Oncology, PLC*, No. 3:11-CV-00376-GNS, 2015 WL 6870140, at *3 (W.D. Ky. Nov. 6, 2015) (unsealing documents with no "specificity beyond routine investigative procedures"); *Aurora*, 2017 WL 8781118, at *2 (denying request to seal "routine applications for enlargements of time" that "discuss[ed] ministerial discovery matters like the number of documents collected, the issuance of a civil investigative demand, and the existence an interview with the Relator"); *Johnson-Pochardt*, 2003 U.S. Dist. LEXIS 4758, at *8 (denying request to seal extension motions that were "brief, similar to one another, [ ] cursory in their explanation of why an extension is

needed," did not reveal "the process of government's election to intervene," and merely "relay[ed] the government's indecision rather than its motivation"); *Lee*, 2006 WL 305966, at *3 (unsealing documents that did "not implicate specific people, provide substantive details of the investigation, or reveal any of the attorney's thought processes").

Courts have kept under seal documents that might jeopardize future investigations, included substantive details the disclosure of which would result in harm, revealed Government strategy, or revealed attorney thought processes. *Brunson v. Lambert Firm PLC*, 757 F. App'x 563, 566 (9th Cir. 2018) (holding that district court did not abuse discretion in keeping sealed in FCA case government memoranda that "disclosed confidential information concerning the government's internal investigation of the allegations in the complaint" where district court had found "that unsealing the memoranda would jeopardize future investigations"); *O'Keefe*, 902 F. Supp. at 192 (declining to unseal motions for extensions of time because the motions and accompanying memoranda provided "substantive details regarding the government's methods of investigation" disclosure of which would result in harm); *Denomme*, 2001 WL 37124485, at *2 (sealing documents that "reveal[ed] the Government's strategy and thought processes concerning investigation of the claim"); *U.S. ex rel. Stephens v. Prabhu*, No. CV-S-92-653-LDG, 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1994); *Alridge*, 2018 WL 1162252, at *7-9 (lifting seal as to all documents except government memoranda that "reveal[ed] the Government's strategy and thought processes regarding the investigation"); *Locklear*, 2018 WL 3419272, at *2 (maintaining government's pleadings under seal); *U.S. ex rel. Bernier v. Infilaw Corp.*, No. 616CV970ORL37DAB, 2017 WL 3698361, at *1-2 (M.D. Fla. Aug. 15, 2017); *Rocky*, 2015 WL 3494501, at *1-3; *Monahan*, 2009 WL 10733720, *3-4.  However, some courts have found, based on the specific content of the documents in the record, that the better approach is redaction of only

the sensitive information. *See, e.g.*, *U.S. ex rel. Howard v. Lockheed Martin Corp.*, No. 1:99-CV-285, 2007 WL 1814944,at *1 (S.D. Ohio June 21, 2007) (holding that redactions were "necessary to protect confidential investigative techniques employed by the United States and to protect other investigations and prosecutions"); *Yannacopolous*, 457 F. Supp. 2d at 859 (observing that "[i]t may also be proper to provide only redacted copies of sealed documents to the defendant in order to protect sensitive information"); *Goodstein*, 2001 WL 34091259, at *2-3; *Carolina*, 2021 WL 325705, at *4-5; *Purcell*, 415 F. Supp. 3d at 577.  While the Court is unaware of any court to have considered the application of a "law enforcement/investigatory files privilege" such as that cited by the United States to these types of filings, some district courts have rejected claims that such documents are entitled to protection by the work-product doctrine. *See Health Outcomes*, 349 F. Supp. 2d at 174 ("Because discovery is not at issue here, the work product doctrine is inapplicable."); *Goodstein*, 2001 WL 34091259, at *3 ("[T]he work product doctrine is inapplicable here, as a discovery request is not at issue. Rather, the Defendants are simply requesting "access to materials filed with the Court in a normally public record."). *But see Matsutani*, 2010 WL 11515341, at *3-4 (noting that while other courts have found the work product doctrine only applies to discovery, "courts have treated the FCA pre-intervention sealing procedure as being analogous to discovery, and the policies underlying the work product doctrine[ ] suggest that its principles should apply beyond a technical interpretation of what constitutes 'discovery' ").

Applying these principles to the instant case, the United States' request to seal "all other contents of the Court's file in this action" other than the Complaint (DN 1), the United States' Notice of Consent to Voluntary Dismissal (DN 21), and the Court's Order regarding dismissal must be denied at least in part.  "[A]ll other contents of the Courts' file in this action" describes

twenty-four of the twenty-six docket entries to date.  The entries included not only the United States' motions for extension of time to determine whether to intervene, but also Relator's cover sheet (DN 1-1), initial motion to seal this case and proposed order (DNs 3, 3-1), notice of voluntary dismissal (DN 22), and motion to extend temporary seal and proposed order (DNs 23, 23-1).  The content of latter was discussed at length above.  The entries also include several entries related solely to Court business such as the case assignment (DN 2), order of reassignment (DN 17), referral to Magistrate Judge Edwards (DN 18), recusal order of Magistrate Judge Edwards (DN 25), and the referral order to the undersigned (DN 26).  The Court also granted Relator's motion to seal (DN 3) by adopting her proposed order.  (DN 4.)  The above authorities and the United States' request to seal do not justify a seal of either Relator's filings or the Court's procedural orders and referrals.  These documents contain no discussion of and no confidential information regarding the United States' investigation sufficient to justify a seal.  The Court cannot envision how disclosure of these documents would result in any harm to the United States, or anyone else, at this stage.  Accordingly, the Court will order that the following documents be unsealed:

- Cover Sheet (DN 1-1);
- Case Assignment (DN 2);
- Relator's Motion to Seal and proposed order (DNs 3, 3-1);
- Order granting Relator's Motion to Seal (DN 4);
- Order of Reassignment (DN 17);
- Referral Order to Magistrate Judge Edwards (DN 18);
- Relator's Notice of Voluntary Dismissal Without Prejudice (DN 22);
- Relator's Motion to Extend Temporary Seal and proposed order (DNs 23, 23-1);
- Recusal Order of Magistrate Judge Edwards (DN 25); and
- Referral Order to the undersigned (DN 26).

The Court has already unsealed Relator's Complaint (DN 1) per the above analysis, and the United States does not object to the unsealing of the same.  The United States also does not object to the unsealing of its Notice of Consent to Voluntary Dismissal Without Prejudice As to The United States and Motion to Enter Proposed Order to Unseal (DN 21) and its accompanying proposed

order (DN 21-2).  Having reviewed the same, these documents contain no information justifying a seal pursuant to the above authorities and disclosure of the documents will harm no one.  Thus, the Court will order that DNs 21 and 21-1 be unsealed.

The remaining docket entries consist of six motions for extension of time to consider election to intervene with accompanying proposed orders filed by the United States (DNs 5, 5-1, 7, 7-1, 9, 9-1, 11, 11-1, 15, 15-1, 19, 19-1), one motion for partial lift of the seal with accompanying proposed order (DNs 13, 13-1) filed by the United States, and the Court's orders regarding these motions (DNs 6, 8, 10, 12, 14, 16, 20).  Of these documents, the United States' proposed orders and the Court's orders granting those motions contain no confidential investigative information or specific details and instead recite only general findings sufficient to support the ruling.  As with the above cited docket entries, the Court cannot conceive of any harm that would be worked by disclosure of these documents.  Thus, the Court will order that DNs 5-1, 6, 7-1, 8, 9-1, 10, 11-1, 12, 13-1, 14, 15-1, 16, 19-1, and 20 be unsealed.  The United States' motion for partial lifting of the seal (DN 13) likewise contains no confidential investigative or other information justifying a seal.  While the motion was made *ex parte* at the time to avoid suggesting the existence of other *qui tam* actions to Relator, given the pending dismissal in this case and the fact that the motion contains no specific information regarding other *qui tam* actions, the Court finds no compelling interest in keeping the motion under seal.  Likewise, given the lack of specific identifying information regarding the "other" actions, the Court finds that no harm is worked by disclosure at this stage.  The Clerk will be directed below to unseal DN 13.

This leaves primarily the United States' motions for extension of time to consider election to intervene, several of which the United States has specifically requested remain under seal.  (DN 21.)  Having reviewed those motions, the Court sees nothing in them that could be categorized as

"details of an investigation."   The motions generally reference the standard applicable to the request, summarize the allegations in Relator's complaint, recite the date the current election period expires, and indicate whether the Relator or the other Plaintiff States consent to the extension.   They contain general statements about assembling an investigative team, conducting a review of billing records, conducting discovery, reviewing documents productions, interviewing unnamed witnesses, and interviewing the Relator.   These are exactly the sort of "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be used in the regular course of business" and as such do not justify a seal. *Mikes*, 846, F. Supp. at 23.   While each motion contains a list of necessary tasks for the United States to complete prior to making its intervention decision that could have included the types of attorney thought processes or strategy determinations that other courts have found are entitled to protection, these motions referenced only a need for the United States to continue to assess whether to intervene, determine the accuracy of Relator's allegations, and evaluate whether those allegations are supported by the evidence, none of which are the types of confidential strategy determinations that are necessary to be kept under seal.   Thus, the Court sees no justification to maintain these motions under seal and no harm that would result from their disclosure.   However, given the United States's specific request that the Court maintain the seal on these documents, the Court will keep the motions provisionally under seal and give the United States the opportunity to submit a supplemental memorandum in support of a seal that " 'analyze[s] in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'"   *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter*, 297 F.3d at 548).   If no such motion is filed, the Court will order that the motions be unsealed.

The remaining docket entry consists of the United States' Notice of Filing and attached "confidential letters" regarding the consent of the Plaintiff States to the dismissal.  (DNs 24, 24-1, 24-2.)  Though each of the letters contains the label "Confidential: Matter Under Seal," it is unclear to the Court whether that label relates to the content of the letter or was placed on the letters because each includes a subject line identifying by name and case number the instant action, which at the time the letters were sent was sealed.  The Court likewise finds no confidential investigative information within these letters or harm that would be worked by their disclosure and, thus, sees no reason to maintain them under seal.  However, as with the extension motions above, the Court will keep these documents provisionally sealed to allow the United States to file additional authority and argument regarding why these should be maintained under seal.

## III.   ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)   Relator's Motion to Extend Temporary Seal (DN 23) is **DENIED**.

(2)   The Government having filed its notice regarding non-intervention, the Clerk is directed to **UNSEAL** Relator's Complaint (DN 1) and unseal the docket for this action from the date of entry of this opinion forward.  The instant memorandum opinion and order shall be publicly available.

(3)   The United States' Motion to Enter Proposed Order to Unseal (DN 21) is **DENIED**.

(4)   The Clerk shall **UNSEAL**:

   (a)   DN 1-1;
   (b)   DN 2;
   (c)   DN 3;
   (d)   DN 3-1;
   (e)   DN 4;
   (f)   DN 5-1;
   (g)   DN 6;
   (h)   DN 7-1;

     (i)       DN 8;
     (j)       DN 9-1;
     (k)       DN 10;
     (l)       DN 11-1;
     (m)     DN 12;
     (n)       DN 13;
     (o)       DN 13-1;
     (p)       DN 14;
     (q)       DN 15-1;
     (r)       DN 16;
     (s)       DN 17;
     (t)       DN 18;
     (u)       DN 19-1;
     (v)       DN 20;
     (w)     DN 21;
     (x)       DN 21-1;
     (y)       DN 22;
     (z)       DN 23;
     (aa)     DN 23-1;
     (bb)    DN 25; and
     (cc)     DN 26.

(5)    The Clerk shall maintain **PROVISIONALLY UNDER SEAL** pending further order from the Court:

     (a)       DN 5;
     (b)       DN 7;
     (c)       DN 9;
     (d)       DN 11;
     (e)       DN 15;
     (f)       DN 19;
     (g)       DN 24;
     (h)       DN 24-1; and
     (i)       DN 24-2.

(6)    On or before **March 28, 2022**, the United States may file a supplemental motion or memorandum regarding why the seal should be maintained as to DNs 5, 7, 9, 11, 15, 19, 24, 24-1, and 24-2 that contains sufficient supporting authority for its position. If necessary, the United States may also propose appropriate redactions

19

to these documents.  If no such motion or memorandum is filed on or before the

deadline, the Court will direct the Clerk to unseal the documents.


Colin H Lindsay, Magistrate Judge

United States District Court


cc:  Counsel of record

March 17, 2022

20